## MOYLE v. THOMAS et al.

No. 2647.   Decided August 4, 1915 (151 Pac. 361).

1. APPEAL AND ERROR—REVIEW—UNASSAILED FINDINGS. Finding of fact by the trial court which is unassailed by either party must, for the purposes of decision, be treated as though the fact found was stipulated.   (Page 548.)

2. BOUNDARIES—ASCERTAINMENT—REVERSING CALLS. The southeast corner of a lot of land owned by decedent was uncertain. At an administrator's sale defendant acquired a frontage of three rods commencing at the southeast corner. The decree of distribution under which plaintiff traced her title distributed the remainder to the heirs and described their land as commencing at a point three rods from the southeast corner and thence running 133.65 feet. *Held* that, as that is certain which can be made certain, plaintiff's interest may be ascertained by running from the southwest boundary a line of 133.65 feet.   (Page 548.)

3. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR'S SALE—PURCHASER. A purchaser at an administrator's sale takes subject to the rule of *caveat emptor*, and hence defendant could not complain; though he did not receive the full three rods, and plaintiff could not complain if, when the uncertain boundary was located, defendant had more than the three rods.   (Page 548.)

4. BOUNDARIES—AGREED BOUNDARIES—ACQUIESCENCE. Where, within three years after her purchase, plaintiff instituted a suit wherein she sought to quiet her title to land embraced within defendant's fence, defendant could not, though the suit was twelve years later dismissed for want of prosecution, contend, a second suit being promptly instituted, that there was an agreed boundary line by acquiescence.   (Page 552.)

5. ADVERSE POSSESSION—WHAT CONSTITUTES. Nor in such case could defendant set up title by adverse possession or limitation.   (Page 553.)

6. ESTOPPEL—EQUITABLE ESTOPPEL. Nor was plaintiff estopped to claim the land.   (Page 553.)

Appeal from District Court, Third District; Hon. *M. L. Ritchie*, Judge.

Action by Alice E. Moyle against Moroni J. Thomas and another.

Judgment.   Plaintiff appeals.   Defendants cross-appeal.

MODIFIED and REMANDED.

*Moyle & Van Cott* and *A. E. Moreton,* for appellant.

*E. C. Ashton* and *Julian M. Thomas* for respondents and cross-appellants.

### APPELLANTS' POINTS.

The defendants have pleaded the Statute of Limitations as a bar to plaintiff's cause of action.   The courts of California, from which State our Statute of Limitations and adverse possession have been copied, have repeatedly held that these statutes (limitations and adverse possession) must be construed together, and that the Statute of Limitations does not run unless the party claiming to hold adversely proves that he has paid the taxes during the requisite period of years preceding.   (*Ross* v. *Evans,* 4 Pac. 443; *Cavanaugh* v. *Jackson,* 34 Pac., 509.)   Where one adjoining owner occupied up to a certain line, and allowed the other owner to do so, under the belief, induced by a mistake in a survey, that such was the true line, it cannot be presumed that such line was agreed on as the boundary.   (*Stier* v. *Latreyte,* 50 S. W. 589; *Jordan* v. *Ferree,* 70 N. W. 611; *Schad* v. *Sharp,* 8 S. W. 549.)

FRICK, J.

On the 4th day of November, 1912, the plaintiff commenced this action against the defendants to quiet title to what she calls the ''east seven feet more or less'' of the parcel of land designated M on the following plat:

In her complaint she gives the dimensions of the parcel of land as follows: 138.9 feet on the south, 91.33 feet on the west, 84.27 feet on the north, and 106.57 feet on the east boundaries thereof; the place of beginning being given as three rods west (being the point marked "a" on the plat) of the southeast corner of lot 1, block 26, plat E, Salt Lake City survey. The defendant Thomas is the owner of the parcel of land marked T on the plat, being a parcel of land 3x6½ rods. The strip in controversy is the shaded strip marked S-S on the plat. Originally Carl W. Ericzon, deceased, owned the entire south front of lot 1. Before his death, however, he sold the triangular parcel marked E on the plat to his neighbor on the west and purchased from him the triangle on the southwest marked X. This exchange made the decedent's west boundary line due north and south, and it is so designated in some of the deeds hereinafter referred to. The parties to this action deraign title to their respective parcels from the same source, to wit, from the estate of Carl W. Ericzon aforesaid. The facts relating to their respective claims of title, briefly stated, are these:

On June 25, 1889, Carl W. Ericzon aforesaid died intestate. At the time of his death he was seized of the two parcels of land marked M and T, respectively, on the plat, and, it seems, occupied them with his family as one parcel. At his death he left surviving him his widow and four children as his only heirs. One John Nyberg was duly appointed administrator of said estate, and immediately after his appointment made application to the proper court to sell a portion of the parcel of land owned by the deceased to pay the debts of the estate. An order of sale was duly made by the court in which it was ordered that the administrator sell a parcel of land described as follows:

"Commencing at the southeast corner of lot 1, block 26, plat E, Salt Lake City survey, running thence west 3 rods; thence north 32 deg. 15 min. west six and one-half (6½) rods; thence east 3 rods; thence south 32 deg. 15 min. east six and one-half (6½) rods to the place of beginning."

It also appears that at or about the time of the sale the defendant Thomas spoke to the attorney for the administrator

respecting the purchase of the property and suggested that, inasmuch as the location of the boundaries of the land was uncertain, a survey should be made so as to establish such boundaries.    It seems that the attorney for the estate spoke to the administrator about the matter, and a competent surveyor was employed to make the survey.    Both the defendant and his wife testified, and they are not disputed in this respect, that the end of the three rods west of the southeast corner of lot 1 was, by the surveyor, placed at the west margin of the shaded strip marked S-S on the plat, and that the defendant Thomas placed a wood screw in the fence running along on the south side to mark the west end of the south boundary, and that the surveyor drove a peg in the ground marking the boundary on the north end.    Sale was accordingly made in accordance with the foregoing description and was confirmed by the court on the 1st day of July, 1890.    Some time in that year, or in 1891, Mr. Thomas is not certain in which year, he set posts and built a fence along the west margin of the shaded strip as indicated on the plat as and for his west boundary line.    After the sale and confirmation thereof as aforesaid, to wit, on the 29th day of September, 1890, the probate court duly made an order of distribution of the remaining portion of said real estate described as follows:

"Parts of lots 1 and 2, block 26, plat E, Salt Lake City survey, commencing at a point 3 rods west from the southeast corner of lot 1 aforesaid; thence west 8.1 rods; thence north 90.7 feet;  *  *  *  thence east 76 13/20 feet; thence south 15 min. east, 6½ rods to beginning."

It will be observed that lot 2 is mentioned in the decree of distribution because the triangular strip marked X on the plat is in that lot.    The court distributed to the widow an undivided one-third interest and to the four minor children the remaining two-thirds in undivided shares.    One of the children subsequently died, and the mother, being the only heir, became the owner of an undivided one-half of the whole of the remainder of the estate.    On the 2d day of March, 1895, the mother conveyed her one-half interest by deed to the plaintiff. In the deed from the mother the parcel of land is described as in the decree of distribution, namely, as being 8.1 rods

(133.65) feet on the south boundary, 90.7 feet on the west boundary, 76.65 feet on the north boundary, and 6½ rods (107.25 feet) on the east boundary. On the 18th day of December, 1903, one of the children, a son, conveyed his one-sixth undivided interest in said land to the plaintiff. On June 10, 1905, another son conveyed his one-sixth interest to her, and in September, 1906, the last of the children, a girl, conveyed her one-sixth interest to the plaintiff. In two of these deeds from the children the dimensions of the land are given as 138.9 feet on the south, 91.33 feet on the west, 84.27 feet on the north, and 106.57 feet on the east boundaries, and in the other deed the length on the south is given as 139.9 feet, while all other dimensions are the same as in the deeds of the other two children. All of the deeds, including the one from the mother, have a common starting point, namely, the southeast corner of lot 1, block 26, plat E. Some time in 1898, and before she had acquired the interests of·the children, the plaintiff commenced an action in the district court of Salt Lake County against the mother and the minor children aforesaid, and also against the two defendants in this action, to quiet the title and to partition the land described in the decree of distribution aforesaid. In the complaint the dimensions of the parcel of land are given as being 8.1 rods (133.65 feet) on the south boundary, 90.7 feet on the west boundary, 76.65 feet on the north boundary, and 107.25 feet on the east boundary. It is alleged in that complaint that the defendant Thomas claims to be the owner of the east 7 feet of the parcel of land last above described, which claim, it is averred, is without foundation or right. The prayer of the complaint is for a decree quieting the title in plaintiff and for a partition, or, if such cannot be made, then for a sale of the whole and a distribution of the proceeds among the parties in interest. After that action was commenced, as we have shown, the plaintiff purchased the remaining outstanding interests held by the children, and hence there was no further necessity either to sell or to partition in kind. Nothing was done in that action, and the district court, on its own motion, on the 4th day of November, 1911, dismissed it for want of prosecution, and thereafter, on the 4th day of November, 1912, the

present action was commenced by the plaintiff to quiet the title as before stated. In the complaint in this action the dimensions of the land are, however, given as stated at the opening of this opinion. It will thus be seen that there is a marked discrepancy in the dimensions as given in the present complaint and as they were given in the first complaint, and also as between the decree of distribution and the mother's deed and the present complaint. The point of beginning is, however, the same in both the complaints, in the decree of distribution, and in all of the deeds of conveyance, to wit, three rods west of the southeast corner of lot 1, block 26, plat E, Salt Lake City survey. The whole difficulty in this case arises respecting the precise location of the point designated as the southeast corner of lot 1, block 26, plat E.

The district court, after a consideration of all the evidence upon the question, found as follows:

"That the boundary lines of said block 26, plat E, are irregular and not well determined, and that there are discrepancies as to the position of said boundary lines. That it is not definitely known where the southeast corner of said block was established, prior to the said Kelsey survey, or survey of 1902."

This finding is not questioned by either party. The court further found:

"That there is a great difference in the length of the south side of said block 26 between the block established by the survey known as the survey of 1902 and prior or former surveys, the difference being in one case as high as 17.48 feet."

This finding is likewise not assailed. There were also other surveys after the defendant Thomas had purchased the land, and it seems no two of them agree respecting the location of the southeast corner of lot 1, block 26, plat E. Indeed, the original location of that point, so far as this record discloses, has never been ascertained and fixed, unless it was ascertained by the surveyor employed by the administrator in 1890, when the sale was made to the defendant Thomas. There is, however, no direct evidence in the record that such surveyor found where the original corner was located, none of his field notes, if any were made, having been discovered, and it certainly is

not shown that any one else has since then discovered it. The district court located the boundary line between the parcels of land in question by dividing the 9.7 feet finally claimed by the plaintiff by giving her 4.7 feet and the defendant 5 feet thereof and entered a decree or judgment accordingly. Both parties appeal, and both assail the findings of fact, conclusions of law, and judgment.

Proceeding to a consideration of plaintiff's appeal first, we find that in truth there is practically no conflict in the material and controlling facts as they are developed by the evidence. While much evidence of a secondary character was introduced by both parties, and much of **1, 2, 3** which under different circumstances in similar cases might be material, yet the evidence that must control here is neither doubtful nor disputed. The evidence respecting the precise amount of land that the deceased Ericzon owned at his death and through whom both parties claim, and the precise amount that was distributed to his widow and heirs, is all documentary and admits of no dispute. Again, in this case we have no such a thing as fixed objects or monuments which are made calls in either the decree of distribution, or in the deeds of conveyance, and to which courses and distances must yield. Indeed, the whole trouble arises from the fact that there is no fixed object or monument to start from unless the southeast corner of said lot 1 may be so called. As we have seen, however, even that is, by the court, found not to be a fixed point, and, since neither party assails that finding, it, for the purposes of this decision, must be taken the same as though the fact were stipulated. There is therefore little, if any, cause for dispute with the court's findings.

The real difficulty arises with the conclusions of law and the judgment. The real thing we must determine, therefore, is whether or not the court's conclusions of law are sound. True, there is one finding which seems to fix the true boundary in question between the two parcels of land. That finding is, however, more in the nature of a conclusion from other facts than a pure finding of fact. We start out therefore with the original starting point, that is, the only one constituting a call in all of the conveyances as well as in the decree of distribu-

tion, namely, the southeast corner of lot 1, block 26, plat E, as
a point not definitely fixed. It appears, however, that in 1902,
or about twelve years after the decree of distribution and the
administrator's sale to Mr. Thomas, the city engineer attempt-
ed to locate and fix that point. It is, however, conceded that it
is by no means certain that the point which is now designated
as the southeast corner of said lot 1 is at the
same place where it was located by the original
survey. The claim that the survey of 1902 is really
the only survey that was made of the territory in question is
clearly disputed by the fact that all former conveyances, as
well as the decree of distribution, refer to a former "Salt
Lake City survey," which conclusively · establishes the fact
that there was an original Salt Lake City survey according
to which both the decree of distribution and the conveyances
were intended to be made. In view of the uncertainty as to
just where the original southeast corner of lot 1 was located
when the decree, transfers, and conveyances in question were
made, we, in order to effectuate the intentions of all con-
cerned, must have recourse to the best evidence which is avail-
able. It is clear that immediately after the sale and convey-
ance to the defendant Thomas was made in June, 1890, and
while the whole matter was still fresh in the minds of those
whose duty it was to deal with the estate of the deceased Eric-
zon, including the court making the decree of distribution,
it was known just what amount of land was left in the estate.
The dimensions thereof are specifically given in the decree of
distribution. Those dimensions are as follows: 8.1 rods
(133.65 feet) along the south boundary, 90.7 feet along the
west boundary, 76.65 feet along the north boundary, and 6½
rods (107.25 feet) along the east boundary. Now, this is
precisely the amount of land that plaintiff claimed in her first
complaint and is the precise amount in which she purchased
a one-half interest from the widow in March, 1895. Although
in the deeds from the heirs larger dimensions are given, yet
no explanation is made from whom any one or all of them re-
ceived a larger amount of land than was contained in the
decree of distribution, which is the source of their title. In
fact, neither of the heirs could convey more than he had, and

therefore the amounts in excess of what they owned as described in their deeds is without any force or effect, at least in so far as this case is concerned.

It is axiomatic that in equity that is certain which can be made so. If therefore we can certainly locate and designate upon the ground the precise amount of land to which the plaintiff is entitled through the conveyance to her, we have arrived at the solution of this case. This, in our judgment, can be done without much difficulty. There seems absolutely no uncertainty respecting the location of plaintiff's west boundary line, either as to courses or distances, or otherwise, as the same was fixed and established by the decree of distribution and as recognized by the court in this case in its findings and conclusions of law. Neither is there any doubt respecting the location of the north or the south boundaries. The only difficulty is with the east boundary, and that arose from the fact that the starting point, namely, the southeast corner of lot 1, always has been, and still seems, left in doubt. If therefore we start on the west boundary line, that is, at the southwest corner of plaintiff's land, and thence run a line east along the south boundary of her land, a distance of 133.65 feet (8.1 rods), we determine the precise point where her southeast corner should be located.

The court found that, along the south boundary, the plaintiff, at the time of the trial, was in possession of 129.83 feet. She is therefore short on that boundary the difference between what she is entitled to under the decree and conveyance, namely, 133.65 feet, and 129.83 feet, or 3.82 feet. The court did not find the precise amount of land of which plaintiff is now in possession along the north boundary. Assuming, however, that the difference is the same, namely, 3.82 feet, then her east boundary line and her northeast corner should be moved eastwardly a distance of 3.82 feet from where it now is. In other words, according to the assumption just made, the whole of defendant's west boundary line marked by the fence should be moved east onto his parcel of land a distance of 3.82 feet, and when that is done the plaintiff has in fact precisely the amount of land mentioned in the decree of distribution and the amount she obtained from the widow and the heirs. It is true

that, as the southeast corner is now located, the defendant Thomas, by this decision, will still have more than three rods in his parcel of ground. This, however, has and can have no effect, either in law or equity, upon the question respecting the amount to which the plaintiff is entitled in this action. As we have seen, the east boundary line of the defendant Thomas' parcel has been a floating one, and, as the court found, is not even now at rest, unless the city has finally permitted it to be so by establishing the west margin of Wall street which bounds Thomas' parcel on the east. For aught that is made to appear, the southeast corner of lot 1 may originally have been located three rods east of where we have determined the southeast corner of plaintiff's land should be. The fact that the city, in making the various changes by the different surveys, has finally left Mr. Thomas more than three rods of ground, does not concern the plaintiff, at least not from a legal or equitable point of view. She is no more interested in that than she would be if in making the various surveys the city had finally succeeded in taking a few feet from the east margin of Mr. Thomas' parcel, and thus had left him with less than three rods. In such event, no doubt, plaintiff would not have consented to move her east boundary line westward so as to give Mr. Thomas his three rods regardless of the effect it would have had on her holdings, and she could not have been required to do so. This is so, because at an administrator's sale the rule of *caveat emptor* applies, and, ordinarily at least, neither title, quality, nor quantity of the estate sold is warranted. 18 Cyc. 826, 827. The plaintiff, as the successor in interest of the widow and the heirs of Carl W. Ericzon, could therefore have claimed the precise amount that was awarded by the decree of distribution to her predecessors in interest, regardless of whether Mr. Thomas had his full three rods or not.

In view of all the undisputed facts and circumstances of this case, she cannot now successfully claim more of the estate than was distributed to her predecessors in interest, although, for reasons before stated, Mr. Thomas may now have more land added to his parcel on the east. The plaintiff is therefore entitled to have admeasured to her out of the whole es-

tate of Carl W. Ericzon a parcel of land which is 133.65 feet
along the south boundary, 90.7 feet along the west boundary,
.76.65 feet along the north boundary, and 107.25 feet along the
east boundary. The foregoing distances should be measured
from her west boundary as now located on the ground. We
remark that the west boundary line in some of the deeds from
the heirs is given as 91.33 feet in length. The defendant
Thomas has no concern with the length of that boundary line,
and for the purposes of this case it is immaterial whether the
distance is 90.7 or 91.33 feet. Again, we have assumed that
the discrepancy along the north boundary is the same as the
one along the south boundary as found by the court. This
may not be true. The plaintiff is to have admeasured to her
on the north boundary 76.65 feet, regardless of where that dis-
tance may end east of Mr. Thomas' present fence line.

It will be noted that the difference between what the dis-
trict court found and what we have found is not great. In-
deed, in value it is quite small and inconsequential. We can-
not overlook the fact, however, that the district court pro-
ceeded upon an entirely wrong theory or ground in fixing the
boundary, and hence we are compelled to correct the error
regardless of whether the effect of the error is great or small.

Now a few words regarding the defendant's appeal: The
doctrine of an established boundary line, so strongly urged
upon us, for obvious reasons, does not apply in this case. The
administrator was powerless to establish a boundary
line. He, as contended by plaintiff's counsel, could do      4
nothing which would prejudice the rights of the heirs.
Had Mr. Ericzon employed the surveyor, and had he ac-
quiesced in the fixing of the boundary line located by Mr.
Thomas, the case might be different. The boundary, as fixed
by the surveyor, may, however, be regarded as some evidence
of where the original corner of lot 1 was located by the origi-
nal survey. Under the facts and circumstances of this case,
however, his location was not binding upon the heirs and is
not upon the plaintiff. Besides, that fact, standing alone, is
insufficient to justify a finding that the surveyor employed
by the administrator in fact found the original corner, al-
though he may have done so. Again, if the plaintiff had

acquiesced in the boundary line as it was located by Mr.
Thomas until 1912 when she commenced this action, the case
might again be different.  She, however, did not acquiesce
in the fence line for any great length of time.  She acquired
the one-half interest in the estate in March, 1895, and in 1898,
a little more than 3½ years thereafter, she brought her action
disputing the fence line as the boundary.  It is unimportant
what legal effect be given to that action otherwise, since it
clearly is sufficient to show that she disputed the boundary
as marked by the fence.  Before she acquired an interest in
the estate, the heirs were minors, and hence could not consent
to the location of the boundary line.  There was therefore no
boundary line established, either by express agreement, sur-
vey, by acquiescence, or otherwise.  That question therefore
is out of the case.

Neither is there any merit in the claim of adverse posses-
sion, nor to that of the statute of limitations or estop-
pel.  The reasons for these conclusions are so obvious    **5, 6**
that we shall not state them.

It follows therefore that the appeal of the plaintiff must
entirely fail, while that of the defendant must fail except to
the extent that the findings should be, and the conclusions of
law and the decree are hereby, modified.  In view that the
findings of fact are very voluminous and contain both findings
of evidentiary facts and conclusions of law, they perhaps
should be redrafted to conform to the views herein expressed.

In conclusion we remark that, if the parties cannot agree
upon a practical location of the east boundary line of the
plaintiff's parcel of land as we have determined the same, then
the district court is directed to appoint a commissioner and
direct him to locate said boundary line and to properly mark
the same upon the ground in accordance with the directions
herein contained.  The district court is further directed to re-
quire the defendant Thomas to remove his fence which he
claims now marks the westerly boundary line of his parcel of
ground to the line as we have herein indicated the same and
as the same may be marked upon the ground by the commis-
sioner if one be appointed; said fence to be moved within a
reasonable time to be fixed by the court.  In case said Thomas

has any trees or buildings on said strip, he should also be required to move those. The expenses of said commissioner, if one be appointed, shall be fixed by the district court, and both parties shall pay an equal proportion thereof.

The findings of fact, conclusions of law, and decree, are therefore modified as herein indicated, and the cause is remanded to the district court, with directions to modify said findings of fact and conclusions of law as herein indicated, and to modify the judgment or decree in the particulars stated, and to enforce the same as modified; further, to adjust the costs, except as herein otherwise stated, as to the court may seem just. Neither party to recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.